IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANNA SIARKOWSKI, et al.           :

    v.                            :   Civil Action No. DKC 15-0430

PETCO ANIMAL
  SUPPLIES, INC., et al.[1]        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this tort case are partial motions to dismiss filed by Defendant SunPet, LTD ("SunPet") (ECF No. 9) and Defendant Petco Animal Supplies Stores, Inc. ("Petco") (ECF No. 12). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motions will be granted.

**I. Background**

    **A. Factual Background**

The following facts are alleged in the complaint. (ECF No. 1). On or about November 15 and December 15, 2013, Plaintiff Anna Siarkowski ("Ms. Siarkowski") purchased two small pet rats from a Petco store in Waldorf, Maryland. Ms. Siarkowski and her two minor children (collectively, the "Plaintiffs") were exposed to both rats "on a frequent and ongoing basis." (*Id.* ¶ 12).

---

[1] Defendant Petco Animal Supplies Stores, Inc. states in its motion to dismiss that it is incorrectly identified in the caption. (ECF No. 12, at 1).

Plaintiffs were scratched by the rats and "came into contact with secretions" from the rats. (*Id.* ¶ 13).

Plaintiffs allege that both rats had streptobacillus moniliformis, a bacterium commonly known as rat bite fever. After coming in contact with the rats, Plaintiffs "sustained severe and permanent injuries and symptoms of rat bite fever, including, but not limited to, rash, inflammation, sores, chills, fever, vomiting, headaches, muscle aches, joint pain and swelling, flu-like symptoms, and skin irritation, which required medical treatment and will require medical treatment into the future." (*Id.* ¶ 26).

**B. Procedural History**

On February 13, 2015, Plaintiffs filed a complaint against Defendants PetCo and SunPet (collectively, the "Defendants"). Plaintiffs' complaint contends that SunPet "regularly sold live rats" to Petco stores, including the store where Plaintiffs purchased their rats. (*Id.* ¶ 3). Plaintiffs' complaint asserts twenty-one counts against Defendants, the same seven on behalf of each Plaintiff: assault (Counts I, VIII, and XV), battery (Counts II, IX, and XVI), negligence (Counts III, X, and XVII), products liability (Counts IV, XI, and XVIII), intentional infliction of emotional distress (Counts V, XII, and XIX), gross negligence (VI, XIII, and XX), and *res ipsa loquitur* (Counts VII, XIV, and XI). The complaint seeks judgment against

Defendants, jointly and severally, "in an amount in excess of Seventy Five Thousand Dollars." Plaintiffs also seek punitive damages.

On April 21, 2015, Defendants filed two separate, but nearly identical, pending motions to dismiss the assault, battery, intentional infliction of emotional distress, and *res ipsa loquitur* counts.[2] (ECF Nos. 9; 12). Defendants also seek to dismiss Plaintiffs' demands for punitive damages. Plaintiffs filed a response in opposition (ECF No. 15), and Defendants replied (ECF Nos. 16; 17).

**II. Standard of Review**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or

---

[2] For purposes of this memorandum opinion, the two motions will be discussed and treated together.

"naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver,* 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal,* 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

**III. Analysis**[3]

**A. Battery**

"A battery occurs when one intends a harmful or offensive contact with another without that person's consent. . . . [A]n indirect contact, such as occurs when a bullet strikes a victim, may constitute a battery. 'It is enough that the defendant sets a force in motion which ultimately produces the result.'"

---

[3] Plaintiffs consent to the dismissal of the assault counts. (ECF No. 15, at 14). Accordingly, Counts I, VIII, and XV will be dismissed.

*Nelson v. Carroll*, 355 Md. 593, 600-01 (1999) (quoting Prosser & Keeton, *The Law of Torts* § 9, at 40 (5th ed. 1984)). The Court of Appeals of Maryland has noted that "[i]t is universally understood that some form of intent is required for battery. . . . The intent element of battery requires not a specific desire to bring about a certain result, but rather a general intent to unlawfully invade another's physical well-being through a harmful or offensive contact." *Id.* at 601-02.

Here, Plaintiffs contend that Defendants battered them because they "intended to have the pet rats come into contact with the Plaintiffs" and Plaintiffs did not consent to touching diseased rats. (ECF No. 15, at 15-16). The complaint asserts that Defendants intentionally "touched" Plaintiffs through the sale of, and subsequent scratching by, the rats. (ECF No. 1, at 8). Defendants counter that Plaintiffs' complaint does not allege any facts showing that Defendants "effected an offensive, unpermitted contact on Plaintiffs." (ECF No. 9, at 10). Rather, Defendants contend that the parties were engaged in "simple sales transactions." (ECF No. 16, at 2). The key question is if Plaintiffs' contact with the rats constituted "contact" by Defendants.

Although an indirect contact, such as the firing of a bullet, may constitute a battery, *Nelson*, 355 Md. at 601, Plaintiffs have not plausibly alleged that type of battery. If

5

Defendants unleased the rats on Plaintiffs, the complaint could plausibly state that Defendants intended unlawfully to invade Plaintiffs' physical well-being or legally protected interests. However, here, the complaint merely alleges a routine sale of pets. To find a retailer liable for battery based on the subsequent use of something it sold "would expose the courts to a flood of farfetched and nebulous litigation concerning the tort of battery." *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539, 548 (D.Md. 1997); *see also Agbebaku v. Sigma Aldrich, Inc.*, No. 24-C-02-004175, 2003 WL 24258219, at *18 (Md.Cir.Ct. June 24, 2003) (dismissing battery claims arising from emission of pollution because the defendant did not intend unlawfully to invade the plaintiffs' physical well-being "through its ordinary conduct of producing energy"). Because the complaint does not plausibly allege that Defendants intended to invade Plaintiffs' legally protected interests through the sale of the rats, Plaintiffs' battery claims (Counts II, IX, and XVI) will be dismissed.

**B. Intentional Infliction of Emotional Distress**

As Judge Titus noted in *Vance v. CHF Int'l.,* 914 F.Supp.2d 669, 682 (D.Md. 2012):

> In order to succeed on an intentional infliction of emotional distress claim, Plaintiffs must demonstrate (a) intentional or reckless conduct that is (b) outrageous and extreme (c) causally connected to (d)

6

> extreme emotional distress. *See Caldor, Inc. v. Bowden,* 330 Md. 632, 641–42, 625 A.2d 959 (1993). Maryland courts "have made it clear that liability for the tort of intentional infliction of emotional distress should be imposed sparingly, and its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Id.* at 642, 625 A.2d 959 (internal quotation marks omitted). "In order to satisfy the element of extreme and outrageous conduct, the conduct 'must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Mitchell v. Baltimore Sun Co.,* 164 Md.App. 497, 525, 883 A.2d 1008 (2005) (*quoting Batson v. Shiflett,* 325 Md. 684, 733, 602 A.2d 1191 (1992)). The emotional distress "must be so severe that 'no reasonable man could be expected to endure it.'" *Id.* (quoting *Harris v. Jones,* 281 Md. 560, 571, 380 A.2d 611 (1977)). "One must be unable to function; one must be unable to tend to necessary matters." *Id.* (quotation omitted).

In addition, "[e]ach of these elements must be pled and proved with specificity. It is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist." *Foor v. Juvenile Servs. Admin.*, 78 Md.App. 151, 175 (1989). The tort is rarely viable in Maryland. *See Respess v. Travelers Cas. & Sur. Co.*, 770 F.Supp.2d 751, 757 (D.Md. 2011).

Plaintiffs allege that Defendants intentionally inflicted emotional distress on them by selling them the allegedly diseased rats. (ECF No. 1, at 17). They assert that selling

7

diseased rats to a family with young children is outrageous and "shocks the conscious." (ECF No. 15, at 18). Defendants contend that Plaintiffs have not alleged any facts sufficient to show that Defendants' conduct was "extreme or outrageous" sufficient to establish a plausible claim of intentional infliction of emotional distress. (ECF No. 9, at 11).

"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as extreme and outrageous." *Harris*, 281 Md. at 569. Even conduct that is "intended to inflict emotional distress, or . . . has been characterized by 'malice' is not sufficient to establish outrageousness." *Green v. Wills Group, Inc.*, 161 F.Supp.2d 618, 624 (D.Md. 2001) (citing Restatement (Second) of Torts § 46 cmt. d). The only conduct alleged in the complaint is Defendants' selling of diseased rats. (ECF No. 1, at 17). Even if Defendants' conduct was intentional or reckless, the complaint does not plausibly allege that this conduct rises to the requisite level of "extreme or outrageous" so as to "go beyond all possible bounds of decency." *Cf. Fairman v. Santos*, 663 N.Y.S.2d 779, 782 (Sup.Ct. 1997) (dismissing an intentional infliction of emotional distress claim brought against a dog owner by a dog-bite victim who contracted rabies). Accordingly, Plaintiffs' intentional infliction of emotional distress claims (Counts V, XII, and XIX) will be dismissed.

**C.   *Res Ipsa Loquitur***

Plaintiffs' complaint asserts three "counts" of *res ipsa loquitur*, and Defendants move to dismiss the counts. "[A] plaintiff seeking to invoke *res ipsa loquitur* must present evidence of '(1) a casualty of a kind that does not ordinarily occur absent negligence; (2) that was caused by an instrumentality exclusively within the defendant's control; and (3) that was not caused by an act or omission of the plaintiff.'" *Gillespie v. Ruby Tuesday, Inc.*, 861 F.Supp.2d 637, 641-42 (D.Md. 2012) (quoting *Holzhauer v. Saks & Co.*, 346 Md. 328, 335-36 (1997)).

"The doctrine of *res ipsa loquitur* is not a rule of pleading. It relates to the burden of proof and sufficiency of evidence." *Blankenship v. Wagner*, 261 Md. 37, 40 (1971) (citations and internal quotation marks omitted); *see also Norris v. Ross Stores, Inc.*, 159 Md.App. 323, 331 (2004) (noting that *res ipsa loquitur* is "merely a rule of evidence permitting an inference of negligence to arise"). The doctrine of *res ipsa loquitur* allows a plaintiff to use circumstantial evidence to satisfy a *prima facie* case of negligence. *See Gillespie*, 861 F.Supp.2d at 641; *District of Columbia v. Singleton*, 425 Md. 398, 408 (2012). The doctrine of *res ipsa loquitur* merely provides Plaintiffs a way to prove their negligence claims, but it does not provide a separate claim apart from negligence.

9

*See, e.g., Menard, Inc. v. U.S. Equities Dev., Inc.*, No. 01-C-7142, 2003 WL 21995187, at *1 (N.D.Ill. Aug. 18, 2003) ("The doctrine of *res ipsa loquitur* is a type of circumstantial evidence, not a separate legal theory."); *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990) ("*Res ipsa loquitur* is simply a rule of evidence by which negligence may be inferred by the jury; it is not a separate cause of action from negligence.").

Here, Defendants do not move to dismiss Plaintiffs' negligence counts. Rather, they argue that "[a] cursory review of the facts of this case reveals that the doctrine of *res ipsa loquitur* is clearly not applicable." (ECF No. 9, at 13). This may be true, but any discussion of *res ipsa loquitur* necessarily is part of a broader discussion of Plaintiffs' negligence claims, which will remain in this case. Accordingly, a determination regarding the doctrine of *res ipsa loquitur* is premature, and the court will consider it along with Plaintiffs' negligence claims, when appropriate.[4] However, because the doctrine of *res ipsa loquitur* does not present a distinct cause of action separate from negligence, Counts VII, XIV, and XXI will be dismissed.

---

[4] In at least some instances, "the Maryland Court of Appeals has held the doctrine of *res ipsa loquitur* inapplicable to cases involving multiple defendants." *Danner v. Int'l Freight Sys. Of Washington, LLC*, 855 F.Supp.2d 433, 469-70 (D.Md. 2012) (citing *Giant Food, Inc. v. Washington Coca-Cola Bottling Co.*, 273 Md. 592 (1975)).

**D. Punitive Damages**

Plaintiffs' complaint seeks punitive damages for all twenty-one counts. Under Maryland law, a plaintiff seeking punitive damages must prove "actual malice," which means "conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud." *Montgomery Ward v. Wilson*, 339 Md. 701, 733 (1995). "[P]unative damages are awarded in an attempt to punish a defendant whose conduct is characterized by evil motive, intent to injure, or fraud, and to warn others contemplating similar conduct of the serious risk of monetary liability." *Owens-Illinois v. Zenobia*, 325 Md. 420, 454 (1992). A plaintiff can prove actual malice by showing, by clear and convincing evidence, that Defendants "made 'a bad faith decision . . . to market a product, knowing of the defect and danger, in conscious or deliberate disregard of the threat to the safety of the consumer.'" *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 264 (2004) (quoting *Zenobia*, 325 Md. at 463). "[F]or a plaintiff to recover punitive damages, the complaint must contain a specific claim for punitive damages and 'must set forth facts that, if proven true, would entitle the plaintiff to punitive damages.'" *Bowden v. Caldor, Inc.*, 350 Md. 4, 22 (1998) (quoting *Scott v. Jenkins*, 345 Md. 21, 25 (1997)). "[P]laintiffs must plead actual malice with 'a high degree of specificity' . . . [and] must allege *in*

*detail* in his complaint the facts that indicate the entertainment by the defendant of an evil motive or intent." *Dow v. Jones*, 232 F.Supp.2d 491, 496 (D.Md. 2002) (emphasis in original) (quoting *Jenkins*, 345 Md. at 34).

Defendants assert that Plaintiffs' complaint "is devoid of facts, which, if proven, could satisfy the clear and convincing standard that [Defendants] acted with actual malice." (ECF No. 9, at 15). However, at the motion to dismiss stage, the question "is not whether [Plaintiffs'] evidence is sufficient to warrant the imposition of punitive damages, but whether [Plaintiffs have] pled 'enough facts to state a claim to relief that is plausible on its face.'" *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F.Supp.2d 604, 609 (D.Md. 2008) (quoting *Twombly*, 550 U.S. at 570). Plaintiffs, in their opposition to the motions to dismiss, assert that their complaint alleges that "Defendants knowingly and intentionally sold diseased rats to the public." (ECF No. 15, at 21). However, a close reading of the complaint indicates that it does not allege facts plausibly showing that Defendants knew the rats were diseased or that they intentionally sold diseased rats. Instead, the complaint only asserts that Defendants had a duty to inspect "if [they] know or through reasonable use of care should have know[n] that the dangerous condition would not be obvious" to consumers (ECF No. 1 ¶ 46), and "Defendants were aware that diseased live rats are

12

unreasonably dangerous products capable of causing serious injury or death" (*Id.* ¶ 74). Importantly, the complaint does not allege specific facts indicating that Defendants actually knew the rats sold to Plaintiffs were diseased. Plaintiffs' conclusory allegation that "Defendants willfully and maliciously continued to sell live rats to the general public without adequate warnings" about potential diseases is simply a bare assertion that is not supported by any facts alleged in the complaint. The remainder of the complaint merely asserts Defendants' alleged tortious conduct, which is insufficient to plead actual malice. *See Jenkins*, 345 Md. at 36 (noting that "punitive damages do not necessarily flow from a tortious act"). Nothing in the complaint plausibly alleges actual malice with the required specificity. *See Hill v. Brush Engineered Materials, Inc.*, 383 F.Supp.2d 814, 824-25 (D.Md. 2005) (dismissing a claim for punitive damages because the plaintiff only "generally allege[d]" the defendant's knowledge, and did not plead "specific factual allegations to support that charge"). Accordingly, Plaintiffs' claims for punitive damages will be dismissed.

13

## IV. Conclusion

For the foregoing reasons, the partial motions to dismiss filed by Defendants will be granted. A separate order will follow.

                                                            /s/
                                  DEBORAH K. CHASANOW
                                  United States District Judge